David A. Ferro and Elizabeth N. B. Ferro v. Commissioner.
Ferro v. Commissioner
Docket No. 52459.
United States Tax Court
T.C. Memo 1956-94; 1956 Tax Ct. Memo LEXIS 202; 15 T.C.M. (CCH) 485; T.C.M. (RIA) 56094; April 25, 1956
*202 George F. Shinehouse, Jr., Esq., Commercial Trust Building, Philadelphia, Pa., for the petitioners. John D. Armstrong, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency of $7,692.18 in the petitioners' income tax for 1950. The only issue presented is whether during 1950 the petitioners constructively received a dividend of $20,000 from the corporation of which they were the sole stockholders. Findings of Fact The stipulated facts are found as stipulated. The petitioners are husband and wife who timely filed a joint individual income tax return for 1950 with the collector for the first district of Pennsylvania. David A. Ferro, the husband, is hereinafter referred to as the petitioner. In 1933, Montgomery, Inc., a Pennsylvania corporation, was engaged in the business of operating a retail clothing store in Jenkintown, Pennsylvania. Because of its financial difficulties, the corporation, through its stockholders, resolved on November 27, 1933, to liquidate and adopted a plan of liquidation. By March 1934, it became apparent that the plan of liquidation would not produce sufficient *203 funds with which to pay the corporation's indebtedness. Petitioner proposed a plan by which the corporation would acquire funds sufficient for that purpose, namely, that the stockholders of the corporation surrender to it all of their stock and that thereupon he would purchase all of the corporation's common stock for $15,000 and the preferred stock surrendered by the stockholders would be held and remain in the corporation's treasury. Pursuant to the petitioner's proposal, the stockholders of the corporation on March 14, 1934, entered into an agreement to surrender to the corporation all of their stock. The agreement contained the following provision: "NOW, THEREFORE, THIS AGREEMENT WITNESSETH, That, for and in consideration of the premises, mutual promises each made to the other, each declaring that he intends to be legally bound hereby, We, the undersigned, preferred and common stockholders, as set opposite our names, do hereby transfer, assign, and set over to Montgomery, Inc., all our and each of our right, title and interest in and to our shares as below set forth Name
Preferred
Common
Henry C. Gibson
200
200
David A. Ferro
78
516
Edward H. Thaete
370
506
John F. Thaete
10
Benj. T. Britt
20
2 1/2
Jas. H. Glenn
20
10
Henry F. Whalen
4
1
Gustave W. Spies O.D.
4
1
E. Allen Reeves
4
1
Smiths (Albert H. and
Haseltine)
10
2 1/2
*204 Edward H. Thaete, who owned 370 of the total of 700 shares of the corporation's preferred stock and 506 of the total of 1,250 shares of its common stock, before agreeing to surrender his holdings in the corporation, required and received of the petitioner an agreement relative to future profits realized by petitioner through the operation of the corporation. The terms of the agreement, hereinafter referred to as the agreement of March 15, 1934, were stated in a letter from petitioner to Thaete which is as follows: "Philadelphia, Pa. March 15, 1934. "Mr. Edward H. Thaete, 123 South Broad Street Philadelphia, Penna. "Dear Sir: "In consideration of $5.00 for transferring to me 370 shares of Preferred stock and 506 shares of Common stock of MONTGOMERY, INC., registered in your name, and 10 shares of the Common stock registered in the name of John F. Thaete, I agree that all future profits to me thru my interest in MONTGOMERY, INC., shall be shared with you on a fifty-fifty (50-50) basis, after debt of $15,000.00, incurred as of March 17, 1934, is paid and satisfied. "Yours very truly, /s/ David A. Ferro" At a meeting of the board of directors of the corporation on April 11, 1934, the *205 abovementioned written agreement of the stockholders was submitted to the corporation and all the corporation's outstanding shares of common and preferred stock were assigned to it. Thereupon, the directors accepted petitioner's proposal to purchase all of the common stock for $15,000 and directed the issuance to him of 1,250 shares of such stock. In return for petitioner's payment of the agreed amount, the corporation on April 11, 1934, issued 1,250 shares of its common stock to both petitioners jointly. They thereupon became the sole stockholders of the corporation. Eventually the corporation prospered and petitioner, as of June 1, 1949, had received aggregate dividends amounting to $15,000. Thereupon Thaete, through his son who was an attorney, initiated negotiations with petitioner to settle their respective rights arising under the agreement of March 15, 1934. Throughout the negotiations Thaete's son was his representative and petitioner was represented by John P. Lally, Jr. Finally a settlement agreement was reached under which petitioner agreed to pay Thaete, and Thaete agreed to accept, $20,000 for Thaete's complete release of his rights and interests arising under the agreement *206 of March 15, 1934. The petitioner, through his representative, who considered such procedure advantageous to the petitioner for income tax purposes, proposed and Thaete, through his representative and to accommodate petitioner, acceded to the proposal that the following procedure be followed in effecting payment of the $20,000: Thaete would execute the release to petitioner who would then transfer to Thaete 241 shares of stock in the corporation which it was agreed had a value of $20,000; Thaete then would offer the stock to the corporation for $20,000 and the corporation would accept his offer and pay him $20,000 for the stock. In pursuance of the foregoing procedure, Thaete and the petitioner, under date of December 15, 1949, entered into an agreement which, after referring to the agreement of March 15, 1934, the desire of the parties to discharge their respective rights and duties with respect thereto, and their agreement upon the value of the interest of Thaete therein, recited that petitioner would transfer, or cause to be transferred, to Thaete 241 shares of the capital stock of the corporation and that upon receipt of the certificate or certificates for such shares, Thaete *207 would execute and deliver to petitioner a full and complete release of all his (Thaete's) claims, interests and demands under the agreement of March 15, 1934. Simultaneously with execution of the foregoing agreement, Thaete and the corporation, by petitioner as its president, executed an agreement bearing a like date which, after reciting that Thaete was the owner of 241 shares of the corporation's capital stock and was desirous of selling and the corporation was desirous of purchasing said shares, provided that the corporation would pay Thaete $20,000 for the shares, $1,000 in cash at the time of the execution of that agreement, $14,000 in cash at the time of settlement and the corporation's promissory note for $5,000 payable within 6 months of the date of the settlement which was to be effected within 45 days from December 15, 1949, and that upon receipt of the $14,000 and the note for $5,000 Thaete would transfer and deliver to the corporation certificate or certificates for the 241 shares of the corporation's capital stock. Subsequently and on January 12, 1950, settlement was made in the office of Thaete's son. At that time Thaete delivered the release to petitioner, and petitioner *208 delivered to Thaete the certificate or certificates for 241 shares of stock in the corporation. Thereupon Thaete endorsed the certificate or certificates over to the corporation, returned them to petitioner, and received payment from the corporation of $14,000 in cash and the corporation's promissory note for $5,000. As of August 31, 1949, and August 31, 1950, the accumulated earnings and profits of the corporation were in each instance in excess of $20,000. In their income tax return for 1950, the petitioner did not report any amount as having been received from the corporation as dividends. In determining the deficiency involved herein, respondent determined that the petitioners constructively received a taxable dividend in the amount of $20,000 from the corporation as a result of the abovementioned transaction involving the 241 shares of stock in the corporation. Opinion The petitioners take the position that the arrangement under which they parted with 241 shares of their stock in the corporation and the subsequent redemption thereof by the corporation for $20,000 gave rise to two transactions, namely, the transfer of the stock to Thaete for his release of all his rights *209 and interests arising under the agreement of March 15, 1934, and a sale by Thaete of the stock to the corporation for $20,000. The petitioners also urge that whether the transactions be viewed separately or as a unit no taxable income, either by way of a dividend or otherwise, resulted to them therefrom. The respondent contends that the corporation in paying Thaete $20,000 was discharging an obligation of the petitioner in like amount and that accordingly the petitioners constructively received a dividend in such amount. The record does not show, nor do the petitioners contend, that any business purpose of the corporation was served by the corporation's redemption of its stock. Neither does the record show nor do petitioners contend that Thaete acceded to the procedure employed because he was desirous of acquiring stock in the corporation. In fact, the record shows that Thaete participated in such procedure, not for the purpose of acquiring stock in the corporation, but to accommodate the petitioner who desired to have the transaction handled in that manner for the purposes of his income tax. Further, it is to be observed that the agreements, under which petitioner was to transfer *210 the stock to Thaete for the release and Thaete was to transfer the stock to the corporation for $20,000, were executed by the parties simultaneously. It is also to be observed that Thaete never held any certificate for the stock in question except for the brief time during the settlement on January 12, 1950, that it took him to make endorsement thereof over to the corporation. In view of the foregoing, we are of the opinion that Thaete was employed merely as a conduit through whom the stock passed from petitioners to the corporation. Under the settlement agreement between petitioner and Thaete, petitioner agreed to pay Thaete, and Thaete agreed to accept $20,000 for his release of his rights and interests arising under the agreement of March 15, 1934. When Thaete delivered his release to the petitioner, the latter thereupon became indebted to him in the amount of $20,000. By the procedure employed that indebtedness was paid, not by petitioner, but by the corporation. In principle the situation here is not materially different from that in Wall v. United States, 164 Fed. (2d) 462. There the sole stockholder of a corporation transferred a portion of his stock to the corporation *211 under an agreement that it would pay certain of his indebtedness. During the taxable year the corporation paid a portion of the indebtedness. In holding that the amount of the payment was a dividend to the stockholder under section 115(g) of the Internal Revenue Code of 1939, the court said: "It cannot be questioned that the payment of a taxpayer's indebtedness by a third party pursuant to an agreement between them is income to the taxpayer. Douglas v. Willcuts, 296 U.S. 1, 9, 56 S. Ct. 59, 80 L. Ed. 3, 101 A.L.R. 391; United States v. Boston & Maine R. Co., 279 U.S. 732, 49 S. Ct. 505, 73 L. Ed. 929; Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S. Ct. 499, 73 L. Ed. 918. The transaction is regarded as the same as if the money had been paid to the taxpayer and transmitted by him to the creditor; and so if a corporation, instead of paying a dividend to a stockholder, pays a debt for him out of its surplus, it is the same for tax purposes as if the corporation pays a dividend to a stockholder, and the stockholder then utilizes it to pay his debt." We think the foregoing is applicable here and consequently hold that the respondent *212 did not err in determining that petitioners constructively received a taxable dividend of $20,000 from the corporation. The fact that petitioners owned 241 less shares than before the transaction is immaterial since they went to the corporation and they continued to be the sole stockholders. The petitioner has made some argument to the effect that, if a taxpayer has different legal methods by which he may attain a desired result, the method he pursues is determinative for tax purposes without regard to the fact that different tax results would have followed if an alternative procedure had been pursued. We agreed with that principle and accordingly have based our holding on what in effect was done, namely, the transfer by petitioners to the corporation of shares of its stock and the resulting payment by the corporation of an indebtedness of the petitioner, rather than on an attempted disguise of the transaction through the use of Thaete as a conduit. Decision will be entered for the respondent.